UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-224(6) (NEB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S POSITION** |
| v. | ) | **REGARDING SENTENCING** |
| | ) | |
| ABDULLAHE NUR JESOW, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Matthew C. Murphy and Rebecca E. Kline, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 51 months in prison.

Defendant Abdullahe Nur Jesow and his co-defendants, Abdiwahab Mohamud and Sahra Nur, operated a Federal Child Nutrition Program meal site, sponsored by Feeding Our Future, through a non-profit entity called Academy for Youth Excellence. Jesow and Nur also operated a banquet center in the same building as Academy for Youth Excellence called Benedir Hall.

In December of 2020, immediately upon enrolling in the Program, Academy for Youth Excellence began submitting fraudulent reimbursement claims to Feeding Our Future, alleging to have served 2,500 meals to children out of Benedir Hall every single day. In April 2021, the meal reimbursement claims rose to 5,000 meals served per day. According to the claims, all the meals were provided to Academy for Youth

Excellence by S&S Catering, another company owned by Nur and located in the same building as Academy for Youth Excellence and Benedir Hall. In reality, and as Jesow knew, Academy for Youth Excellence served only a small fraction of the number of the meals for which it claimed reimbursement. To substantiate their false claims, Jesow and his co-defendants prepared and submitted false meal counts, attendance records, and invoices from S&S Catering,

When Academy for Youth Excellence received reimbursement payments from Feeding Our Future, it immediately paid the fraudulent S&S Catering invoices. S&S Catering and Academy for Youth Excellence then transferred some of the fraudulently obtained Program funds to Jesow and other co-conspirators. Other co-conspirators transferred money to Jesow through his personal and company bank accounts, some of which Jesow returned in order to launder the money.

During the period from December 2020 through September 2021, Academy For Youth Excellence claimed to have served over 1.7 million meals, for which it received $4,286,088. Jesow received approximately five percent of that amount, much of which he transferred to his con-conspirators in cash or check payments. Jesow used approximately $100,000 of the fraud proceeds to purchase a residence in Columbia Heights, Minnesota.

Jesow was charged by indictment on September 13, 2022, with conspiracy to commit wire fraud (Count 1), wire fraud (Count 12), conspiracy to commit money laundering (Count 14), and money laundering (Count 20). He plead guilty to Count 20 of the indictment on September 18, 2025.

2

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

## A.    Sentencing Guidelines Range

The government does not dispute the offense level computation contained in paragraph 65 of the Presentence Report. However, because the offense level computation contained in the Presentence Report differs from and exceeds the offense level contemplated by the parties in the Plea Agreement, the government respectfully requests that the Court sentence Mr. Jesow in accordance with the parties' agreement.

According to the plea agreement, the base offense level for Count 20 is 26 because the amount of money laundered was more than $3.5 million but not more than $9.5 million. U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(b)(1)(J). The offense level should

3

be increased by 1 level because the defendant's charge of conviction is 18 U.S.C. § 1957. The total adjusted offense level is decreased by 3 levels pursuant to Guidelines § 3E1.1(a) and (b) because the defendant accepted responsibility in a timely manner. Finally, the defendant is entitled to a 2-level reduction because he meets the zero-point offender criteria set forth in Guidelines § 4C1.1(a). The defendant falls into Criminal History Category I.

With a total adjusted offense level of 22, and Criminal History Category I, the defendant's advisory Guidelines range is 41-51 months in prison. With a total adjusted offense level of 22, and Criminal History Category I, the defendant's Guidelines fine range is $15,000 to $150,000.

**B.      Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1.      Nature and Circumstances of the Offense**

Mr. Jesow participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. He took money intended to feed children who no longer could get regular, nutritious meals at school, and used it to enhance his lifestyle. He knew she was not entitled to the money and that it was obtained by lying to the government about the number of

4

children he allegedly served meals to. Simply put, he took advantage of a once-in-a-century global pandemic and the generosity of American taxpayers to enrich himself.

### 2.    History and Characteristics of the Defendant

Mr. Jesow was born in Somalia in 1960. His parents both died when he was a young child, and he was raised by his older siblings. He attended an American-run elementary school and graduated high school in 1981. After a short stint in the Somalian army, Mr. Jesow studied economics at the Somali National University. He graduated in 1985, started a family, and worked as a statistician for the government. In 1998, he moved his family to Kenya and then emigrated to the United States alone. He lived in Chicago until approximately 2018, when he moved to Minneapolis. He worked at a childcare center for two years before opening Bendadir Hall in 2020. He has not had stable employment since his indictment in 2022. Mr. Jesow has type II diabetes.

### 3.    Deterrence, Respect for the Law, Just Punishment, and Protecting the Public

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Mr. Jesow's crime must be viewed in context of the rampant fraud that has plagued Minnesota in recent years. Unprecedented levels of fraud perpetrated on public benefits programs in Minnesota have eroded trust in the government and raised questions about the sustainability of those programs. Too many people, Mr.

5

Jesow included, participate in this kind of fraud because, as they see it, everyone else is doing it. This cynical view must be stopped. It has undermined and endangered important government programs as well as legitimate nonprofit organizations that rely on donations to carry out actual charitable work.

On the other hand, Mr. Jesow's conduct appears to be an aberration in an otherwise law-abiding life. He has no criminal history points and ultimately accepted responsibility for his conduct. His behavior, as well as his age, is indicative of someone who is unlikely to recidivate.

**4.      The Need to Avoid Unwanted Disparities**

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, 93 percent of defendants sentenced within the past four years under the same Guidelines provision, with the same offense level and criminal history as Mr. Jesow, received a sentence of imprisonment. Those who were imprisoned received an average sentence of 40 months. The amount of money Mr. Jesow laundered falls in the middle of the applicable loss bracket contained in § 2B1.1. However, given the egregious nature of the offense conduct, including, specifically, Mr. Jesow's exploiting a national crisis to enrich himself, an above average sentence is warranted.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 51 months in prison.

Respectfully Submitted,

Dated: March 25, 2026,                    DANIEL N. ROSEN
                                          United States Attorney


                                           /s/ *Matthew C. Murphy*
                                    BY:   MATTHEW C. MURPHY
                                          REBECCA E. KLINE
                                          Assistant U.S. Attorneys

7